Final case for argument this morning is 1-4-1542, Microsoft v. Proxyconn, Inc. Mr. Vandenberg, we've got a cross-appeal here, and I understand you're only going to use five minutes for your main argument. Yes, Your Honor. I think we appreciate why, because your appeal is more limited than a lot of cross-appeal issues. Yes, Your Honor. May it please the Court. On our appeal, the sole issue is whether Claim 22's searching step requires performing multiple digest comparison operations, as the Board effectively found at Appendix 36. And our position is that it was legal error for the Board to read into Claim 22 something we submit is not claimed, wasn't even disclosed in the specification, and is not necessary to achieve the claimed result. Well, you want us to construe searching to be equivalent to comparing, right? No, Your Honor. No. And that was Patent Owner's argument that we were seeking that. But Microsoft never sought that below, doesn't seek that here. Our proposed broadest reasonable interpretation was that search means check for, with the corollary that it does not require checking for multiple digests during a single search. And where we get that from is from the specification. Check for what? What's the end of that sentence? Check for what? Check for what the claim is searching for. So the claim says, searching for data with the same digital digest in said network cache memory. So the broadest reasonable interpretation of that is to check for data with the same digital digest. So what does that mean in this context? And we get check for from Figure 5. So Figure 5 has a step that says check for. And then if you go to the specification, the counterpart says search. So it equates those two things. And often how you search depends on what you're searching for. This claim does not restrict how you search, but it does say what you're searching for. And effectively what you're searching for is a particular version of a particular document. So you want to find out whether or not your local machine has not only the same copy as the remote document, but it's the same version. And it's important to note that you do not need to use the digest to find the local copy of the document. If I'm looking for a particular brief, I can use its file name, I can use something else. And the patent makes that prior art, it talks about searching your local cache to see if you have a copy of the document. It's not using digest to do that. Where did digest come in? Digest come in as part of the alleged invention to then verify whether that copy of the document you found in the local cache is indeed the exact same version. Is it the same version of the brief or is it an earlier version of the brief? And that's why the claim does not require doing multiple digest comparisons. All you have to do is find the document on the receiver's side. You may use file names. The patent doesn't specify how to do it because it admits the prior art. I guess I'm a little confused. You're saying that my first question was whether or not the claim construction you proposed involved just comparing the digests of two objects. Is that not what you're telling us? What we're submitting, Your Honor, is in this specification, comparing digests is the last step of the search. It's not the entire search. First, you have to find the correct digest to compare. You have to look at the receiver. The receiver may have a thousand documents on it. Lunch menu, spreadsheets, the blue brief in our case. You find the blue brief in the case. You don't use digest to do that. That's part of the search. You find that candidate and then you do your single digest comparison operation to determine whether or not it's the correct version of the blue brief. ProxyCon's expert, Dr. Kincinski, admitted this at A671 and A673 where he said you would not compare the received digest to a digest for some different document, just as if the candidate is looking at my local machine to see if I have the final version of our blue brief, I'm not going to compare its digest to a digest of the red brief or the yellow brief. And Dr. Kincinski explained that. And again, the board, though, dismissed Perlman Prior Art and Yo Prior Art because those prior art references did the same thing that the Goldstein patent does. It looked at, it found the reference, and this is undisputed, there are a number of digests all associated with different data fragments. Perlman found the right corresponding one. If it's data fragment three, I find the digest for data fragment three and then I compare those two digests. That tells me whether or not I have a verbatim copy. And therefore, we submit that the board committed legal error because, again, it read in this notion of fraud. It says search. It doesn't require that. And the specification doesn't even disclose that. That is critical sign that the board made legal error. They required something that is nowhere in this patent specification. Nowhere does it say I do an initial digest comparison and then I continue the search and do another digest comparison. Thank you. I'll reserve the rest of my time. Mr. Wheelock. Good morning, Your Honors. My name is Brian Wheelock. I'm here on behalf of ProxyCon. I'm here with my co-counsel, Mr. Greg Meyer. May it please the court. We're here because searching means searching. Mr. Vandenberg, we're talking about the language of Claim 22, which is on the record A85. This step we're talking about is searching for data with the same digital digest in said network cache memory. We're trying to find the file that is indexed with this digital digest. We don't already have the digital digest and we're not comparing or checking to see whether these two versions are the same. This step is literally, you get this digital digest from a source that has it. Do you have this version? Okay, let me search through all the files I have and if I have something with the same digital digest, then that means I have this file. You're searching for data based on this digital digest. You don't already have it. You're not doing a compare. You don't know whether you have it or not. You may not have it. It may have been deleted. It may have been altered. So what this step requires literally and quite I want to move you into your cross appeal because there's so many issues there. Let me start with the kind of what I think are process issues. I understand that you make one argument that we couldn't remand this case. Let's assume we said no on anticipation but it goes back on obviousness. Let's assume that we disagreed with some of the claim constructions. This is on your side. And it seems to me you make an argument that we can't here or at least the PTAB can't look at it again because the 18 months are up. Is that your position? Well, we don't see anything in the statute or in the regulations that allows further proceedings. So since this court can construct claims, this court can alter that to alter the existing decision but if it goes back, what rules govern? Are there time limits? It wasn't provided for. It wasn't well I mean reality is that by the time a case gets up here on appeal that the 18 month limit then under your analysis would foreclose any remands. It would just allow us to either reverse or affirm but that we would be foreclosed from ever remanding a case back to the PTAB. Is that your position? We don't see any other alternative so yes that is our position. Let me move you to then this question. We're going to, broadest reasonable interpretation I think is elsewhere covered but I'm particularly interested in this motion to your ability to amend. What is your view of what the PTAB did here? Were they taking the regulations, the regulation that says the amendment does not respond to a ground of unpatentability involved in the trial and saying therefore they could use the DR, is it DRP? Yes. Because that was one of the grounds even if it wasn't the grounds for this claim or were they just saying no we can go beyond that and we can just apply that other case we have essentially that allows that requires that the patentee deal with all of the prior art that he knew about etc. I think it's the former that we were foreclosed from arguing this because they broadened the issues. Well you don't think you were foreclosed. We don't believe we should be foreclosed. Your position isn't that you were required to differentiate between DRP right? Your position that you should have only in your motion to amend you should have only been required to make arguments with respect to the prior art that was asserted against the claims. That's correct. I'm sorry. Is that how you read the regulation where it says the amendment does not respond to a ground of unpatentability involved in the trial? Does that give the PTAT the authority to look at any ground from unpatentability even with respect to claims other than the one you're seeking to amend? We don't think so. We think that all we have to do is clear the references that were cited against us. This is a limited proceeding. There's a very limited ability given the crazy constraints in terms of page limits and everything else. All we can do is distinguish over the art that was cited against us and that's what we tried to do. In the brief that they filed, it wasn't clear to me what position they were taking, but they do say, I thought at some point it seemed to me that they were saying no, what we did here was outside of the regulation, but they made the argument that the regulation is not an exhaustive list and the board has the authority to impose requirements that are not expressly set forth in the regulations. Do you have a position on that? Well, the board isn't a regulatory body. The Patent Office may be, but the board can't create its own rules and regulations. They're constrained by the existing regulations, so they shouldn't have imposed these additional requirements. The whole premise, which has been accepted by at least one panel of this court, is that you have this ability to amend and that's why we're even applying broadest reasonable interpretation. You can't start larding on all these other requirements that can't be met in the 15-page limit. As you're probably aware, the Patent Office has realized that themselves and they're relaxing. We had the unfortunate problem of being the very first IPR declared. But you did, in terms of a kind of due process question, you did have the opportunity. I mean, Microsoft raised the DRP reference in response to your motion to amend. And even as I understand it at the hearing before PTAB, they kind of let you know they were going to consider it and gave you the opportunity to provide any arguments you had with respect to that prior art, right? Well, that part is true, absolutely, Your Honor, but we shouldn't have had to do that. The issues were limited. We distinguished. We were trying to save the claims or they'd be attacked, brought against us, and we did that legally. Some other issues that I would like to address, if the Court will hear us, is some of the definitions. The PTAB is not applying the broadest reasonable interpretation. They're going for the broadest interpretation. The broadest reasonable interpretation does have to take into account the language in the patent itself, and that's what the Board has failed to do. So, when we look at the limitations, for example, addressing Claims 6, 7, and 8, that have the limitation between two other computers. If you look at Claim 6, which is the least claim in that case, and that's on page A-008-4, it's a system for data access in a packet switch network, and it requires that... This is the two other computer claim? Yes, this is the two other computer argument. Why was the Board's construction unreasonable? Well, because it has to be construed in view of what is described in this patent, and it says two other computers. What the claim clearly refers to is the figure 11 embodiment. The two other computers are, for example, the sender and the receiver, and the gateway hangs off that connection. And to say that the caching computer can be one of those two other computers does violence to what's disclosed. It even does violence to what's in the claim, because it says the gateway is between the sender and the receiver in a packet switch network. It says that this cache-verifying computer is hanging off on a local fast network. So, clearly, when the claim said the gateway is between the two other computers in a packet switch network, they meant the two other computers, and saying that the caching computer connected in a different way was part of it, that's just not a reasonable interpretation. So, it's a broad interpretation, but it's not the broadest reasonable interpretation, just looking at the very language of that claim. Further, if you look at the Doctrine of Claim Differentiation, Claim 8 says that those two computers can be combined, wherein the caching computer is integrally formed with a gateway. So, then it disappears. It clearly meant when it said two other computers, those are two other computers and not some piece that may or may not be part of the gateway. So, that's our first position, that they went beyond the broadest reasonable interpretation. The second is if you look at Claims 11, 12, and 14. Those are also on the Appendix of 85. There, we're looking for... Well, I guess, I have a hard time conceptually with this. You're saying that, I mean, you proposit an equally reasonable interpretation? I don't know that... Yours isn't... I mean, if there's... In our world, we have several things, and if we have a broadest reasonable interpretation, I assume then we have a more limited reasonable interpretation, right? Right. I don't know that I'm saying that that is the broadest, what I just said was the broadest reasonable interpretation. What I'm saying is what the board did didn't hit the reasonable part. It's the broadest interpretation, but it's not reasonable to say that other includes something when you say that the two other computers are on the packet switch network and that this caching computer is hanging from the gateway off a different network. When you say two other computers on the packet switch network, you don't mean this one down here. It's not what's shown. It's the Figure 11 and the accompanying text, and it's not what's described. So, it's an interpretation, but it does violate... It's not an interpretation in light of the specification, and we're at least as a patentee with a presumption of liberty entitled to get the broadest reasonable interpretation in light of the specification. So, the other thing I have a chance to address is the response. I was talking about Claims 11, 12, and 14. These claims specifically are directed to what is the sender? What is the source of data doing? And it talks about that it receives a response. You can't receive a response unless you're expecting a response. And the board ignores that. So, when they apply DRP, DRP doesn't send a response. It gets a digest, and the receiver, the one who wants the data, is thinking, hey, wait a minute, I don't have some stuff. So, it doesn't send a response. It sends a get. I need these things. As far as the sender, the source of the data understands, it doesn't know why it's getting this request. It just gets a request and fulfills it. That is not a response, at least from the viewpoint of the sender-receiver, the sender computer, rather, and that's what's covered in these claims, 11, 12, and 14. The sender didn't get a response. It got a request. It's not responsive to anything. And if you read out the word response, you've read out a word of the claim, and that's not the broadest reasonable interpretation. And I think I've already gone into my… Yeah, you want to save it, and that's your… Yeah. Exclusively for purposes of arguing the cross-appeal. Correct. Thank you. Thank you, Your Honor. Your Honor, as to your first question about the remand issue, this Court, of course, has remanded cases to the ITC, which also have a similar statutory restriction. One example is Apple v. ITC in 2013. What happens to that statutory 18 months, though? Is that completely blown out the window? Let's assume hypothetically that we send this case back and we tell the Court to reconstruct the claims, and it's got to consider obviousness and anticipation, etc. Is it your view that they start the clock running again, or that they have no clock running on their analysis? My guess is that there's no statutory clock on that, that it's not the trial proceeding. The trial proceeding, which is subject to that statutory restriction, ended with the final written decision. Obviously, the Patent Office will construe the regulations to require a prompt remand action, but I don't think the statute speaks to that. As far as your next question about the motion to amend, the Patent Office did suggest that the regulation speaking to responding to a ground for patentability is what the PTAB was proceeding under. We don't take a position as to whether that's the most reasonable reading. Is that what you think they did? I couldn't tell, because at the end of the day, they also relied on idle-free, suggesting that they thought they had to go away. They weren't otherwise included in the regulations as they stand. I think they argued both. I'm just saying, as to the first one, I'm not sure that's the best reading of that regulation. Tell me again. Do you think that this regulation would cover prior art that was submitted in connection with claims other than the one that they seek to amend? Well, our position is that the Board is permitted and has to consider the claims compared to the prior art that's in the proceeding. We're simply saying that isn't necessarily what that specific regulation was speaking to. But the Patent Office, in their brief, cited In Re. 11, 652 F. 3rd, 1349, that the Board is not limited to this specific regulation. Is that your view, though? I read In Re. 11. It was a C-site, and it didn't quite go squarely into what we're talking about here. That the Board comes up with a regulation that says a motion to amend may be denied where? And then that's just two examples, and then they can amend it for, they can deny the motion for any number of reasons that they haven't articulated or disclosed to the public? Yes, that is our view, and our position is it has to be that way. It cannot possibly be the intent of Congress or the law to force the Patent Office to grant patents they know, claims that they know are anticipated by prior art that's sitting before them, because that is ProxyCon's position. Well, that may be right, but I think we're talking about two apples and oranges. Nobody's disputing that the Board has the authority and the ability to issue regulations, and presumably they could come up with regulations that they think are necessary in order to cabin these amendments. But here we're in a situation where they haven't arguably done that yet. But, Your Honor, the question really is does that regulation fairly read to mean only? Is it fairly read that the Patent Office issued a regulation saying the only time we can deny a motion to amend are these two grounds? And we submit that would be an unreasonable reading. It's certainly not the Patent Office's reading of its own regulation. It's not the Board's interpretation of its regulation here, and it would be an unreasonable reading because of the dire consequences. Well, the consequences are only dire if the Board doesn't issue regulations that cover all the things that they need, right? Well, as the regulations stand today for the Court to interpret it differently than the Patent Office and to interpret it as being the exclusive grounds, it would just run counter to centuries of patent law, right, because you would be forcing the Patent Office to issue claims on the prior art. I appreciate that, but if you look at Idle Free, which they also cite, which is just a Board opinion, which I guess has never been appealed here because we've never looked at it. One of the things in Idle Free goes even farther than any construction of the regulation. Idle Free says any prior art that the patentee knows about. Don't you think that's a little broad? Do you think that we need that kind of broad requirement in order to get these IPRs done? I think that's certainly a reasonable interpretation by the Board. Whether it should have a rule on it, I can't speak to that. But if that were the rule, CFR rule by the Patent Office, that would be a good rule. There are other opportunities for patent owners to add claims. They could still do ex parte reexam. They could do reissue in the appropriate time. This is not an expedited trial proceeding to be adding new claims with scarce review. They have other proceedings the Patent Office gives the patent owners to add new claims. So this is rightly quite limited. For purposes of my questioning you, I'm not asking you about the policy question about whether they should or they shouldn't. I'm asking you about what authority they have to do it. They're not limited. They could come up with regulations tomorrow, I presume, that might cover. They'll think about anything they need as a limitation and do it through regulations. What I'm questioning is the process by which they issue regulations and say we may deny it for these two reasons. And then they say, but we can do it for any reason we happen to come up with. Well, I wouldn't agree with that characterization. It obviously has to be based on the patent statute. It has to be 102, 103, written description, et cetera. Don't you think the statute, A, I mean there's a huge section that deals with regulations. Doesn't it demonstrate to you that Congress really contemplated that the director shall prescribe regulations? And it goes through all the various parts of the IPR proceeding and telling you what to do. It's after all under this authority that the board did issue regulations with regard to broadest reasonable interpretation, right? Right. Doesn't that suggest that Congress clearly contemplated, they gave the board a lot of discretion, but they contemplated that this would be done through the regulatory notice and comment process, and one in which gave public notice to parties as to what they were allowed and not allowed to do? Yes, but I would think with any administrative agency, they also have some leeway to go beyond the literal language of the regulation, particularly as here, the regulation does not say only. It did not say these are the only grounds. And then certainly from a due process in this case, Your Honor noted, Idle Free came out before their amended motion to amend. Our initial petition mapped DRP to six of the issued claims, and those issued claims were quite close to claim one from which the amended claim was amended. And then we mapped the claims 35 and 36, the amended claims, the DRP, in our response, as Your Honor noted, and Judge Giannetti invited the patent owner to respond to that, and you have an hour argument before the board. There was a lot of due process here. In terms of briefly, in terms, if I may move on to the two. Yes, please. I apologize for taking so much of your time. In terms of the two other computers called point and claim six, yes, figure 11 is certainly in the patent, but this is not a picture claim to figure 11. My friend misspoke when he said that claim six referred to sender and receiver. Claim six does not refer to sender and receiver. The board's broadest interpretation of claim six does not rule out figure 11. It reads on figure 11. It's simply not limited to figure 11. It's not a picture claim. Patent owner, if they wanted a picture claim to figure 11, they needed to recite sender, receiver, gateway, caching computer, and make sure that those were spelled out as being mutually exclusive devices, and they did not do that there. And then finally, on response signal on claims 11, 12, and 14, again, they're reading into the claim. The claim says response signal. It does not say an inquiry from the sender. Claim 11 says the sender transmits data, not an inquiry. It then says response signal, not an answer. Not all responses are answers to inquiry. A sneeze is not an inquiry. Bless you is a response. Thank you. We've got a few minutes left, and then we'll cross the field. Thank you, Your Honors. Two points about the two other computers. Whether it's sender is one of those other computers and receiver, that wasn't my point. My point was that whatever those other computers are, they have to be on that packet switch network. It's completely unreasonable to say that the caching computer hanging off the fast local network is one of those two other computers. So I didn't mean, and if that was taken, I apologize, that the other computers had to be the sender and receiver. My point was that caching computer can't be one of those other computers, whatever the others are computers. The second point, the response, the patent, if you read in context, requires that, from the standpoint of the computer with the data who's sending it out, it's waiting for a response. That's what that section says, and if it gets a response, it takes a further action. One of the possible responses discussed in this application, or this patent, rather, is that the response could be nothing, and nothing is regarded as a response. If you get nothing, what do you do? Well, you do what you were waiting to do. You were waiting for a response. If you didn't get it, you send the data. So response means you are, what you get back is something responsive to what you've already sent, at least in the context of computers that can only send and receive. So those are our points for those reasons, and the reasons I discussed earlier. We think that the claims, well, I just want to make sure that, you know, Claim 24 has not shown to be anticipated by the ARC, that we have shown that we're entitled to 6, 7, and 9 because two other computer limitations is not in the priority if it's properly construed. We are entitled to Claims 11, 12, and 14 because there's no response in the priority. This response should properly be construed in those claims, and that the determination, which I didn't get a chance to address, but Claims 1, 3, and 22, and 23 are entitled because of the definition of receiver. Receiver has to be a certain, you know, the client, an ultimate client. We have that on the briefs, yes. Yes. Thank you for your attention. Thank you. We thank both sides, and the case is submitted.